Argued and submitted November 5, 1979, reversed and remanded
to the Court of Appeals with instructions January 22,
petition for rehearing denied February 12, 1980

INKLEY,
*Petitioner,*
*v.*
FOREST FIBER PRODUCTS CO., et al,
*Respondents.*

(WCB 78-873, CA 13382, SC 26423)

605 P2d 1175

Charles S. Tauman, of Willner, Bennett, Bobbitt & Hartman, Portland, argued the cause and filed the briefs for petitioner.

Mary T. Danford, of Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland, argued the cause and filed the brief for respondent Forest Fiber Products Co.

Darrell E. Bewley, Salem, argued the cause for respondent SAIF. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, Salem.

DENECKE, C. J.

## DENECKE, C. J.

This case arises under the Oregon Occupational Disease Law, ORS 656.802-824. Petitioner Inkley worked from 1956 to 1977 as a welder-mechanic for respondent Forest Fiber Products Co. In September 1976 petitioner filed a claim with the employer seeking compensation for a job-related hearing loss. At that time Forest Fiber Products was a direct responsibility employer, directly liable for the payment of compensation benefits to injured workers.[1] Until April 1, 1976, however, Forest Fiber Products had been a contributing employer,[2] purchasing workers' compensation coverage for its employes through the State Accident Insurance Fund (SAIF). Pursuant to ORS 656.262(1), claims for injuries sustained prior to April 1, 1976, were payable by SAIF, not the employer.

The employer denied petitioner's claim on the ground that his hearing had improved since April 1, 1976. SAIF also denied responsibility, claiming that workplace conditions subsequent to April 1976 could have contributed to petitioner's hearing loss and that this relieved SAIF of any responsibility. No party disputed that petitioner suffers from a compensable occupational disease. The Workers' Compensation Board (WCB) held, however, that neither the employer nor SAIF is liable, and the Court of Appeals affirmed without opinion. *Inkley v. Forest Fiber Products Co.,* 41 Or App 178, 596 P2d 1332 (1979). We granted review

---

[1] ORS 656.017(1) prescribes two methods by which an employer may provide for the payment of benefits due to employes under the Workers' Compensation and Occupational Disease Laws. A direct responsibility employer unilaterally assumes the burden of providing compensation to his subject workers. ORS 656.403(1). The employer may insure his risks with a qualified carrier, but the maintenance of insurance "shall not relieve any such employer from full and primary responsibility for claims administration and payment of compensation under this chapter." ORS 656.403(3). A contributing employer, by contrast, pays premiums to the State Accident Insurance Fund, and the *Fund* assumes direct responsibility for the compensation of employes. ORS 656.262(1).

[2] *See* note 1, *supra.*

[339]

to determine which, if either, of the two potential paying agencies should be required to accept petitioner's claim.

Petitioner worked in a hardboard plant. His job involved prolonged exposure to noisy machinery. Petitioner could not say exactly when his hearing problem began. At a WCB hearing in 1978 he testified:

"It is a thing that sneaks up on you. Then you find out that you have lost it. It is something going back through the last ten, twelve years."

An audiogram commissioned by the employer in 1972 indicated a 34.3 per cent hearing loss. In 1974 or 1975 the employer began to provide earmuff type noise mufflers and also moved the maintenance shop in which petitioner spent half his work day to a quieter part of the premises. Nevertheless, by March 1976 the extent of petitioner's hearing loss had increased to 37.4 per cent.

In September 1976 petitioner filed with the employer a claim for compensation for his hearing loss. By then Forest Fiber Products had become a direct responsibility employer, and petitioner never submitted a claim to SAIF. On April 2, 1977, with the claim still pending, petitioner retired. In January 1978 petitioner received a denial notice from the employer's insurance carrier, Employee Benefits Insurance Co. (EBI).[3] The letter stated that the denial was based upon the fact that petitioner's hearing had improved since the employer assumed coverage. EBI cited another audiogram test taken after petitioner's retirement in May 1977, which revealed a slight improve-

---

[3] Respondent Forest Fiber Products purchased workers' compensation coverage from EBI. The coverage took effect on April 1, 1976, the date that the company became a direct responsibility employer. Although the purchase of insurance did not affect the employer's direct liability to its workers, ORS 656.403(3), EBI defended the employer's position at all times throughout this proceeding.

ment in petitioner's hearing since the March 1976 test.[4]

Petitioner filed a timely request for a hearing. At petitioner's request the referee ordered the joinder of SAIF as a defendant. At the hearing the petitioner did not take a position as to which of the two carriers is responsible. EBI and SAIF each attempted to show that the other should bear the burden. In addition, SAIF challenged the referee's authority to join a defendant who had not been served with a notice of claim. As stated, the WCB ultimately held that neither carrier was liable. Thus, petitioner has received no compensation to date for a hearing loss which all parties agree is job related.

The petitioner in this case presents the same problem as the occupational disease claimant who at different times held jobs with several employers, each of which involved exposure to conditions which might cause the disease. By their very nature chronic conditions such as silicosis, asbestosis, and occupational loss of hearing usually cannot be traced to a single incident or injury. As we observed in *White v. State Ind. Acc. Comm.,* 227 Or 306, 322, 362 P2d 302 (1961):

"* * * An occupational disease is stealthy and steals upon its victim when he is unaware of its presence and approach. Accordingly, he cannot later tell the day, month or possibly even the year when the insidious disease made its intrusion into his body. Although his weakened condition may manifest ill health its cause may be uncertain and puzzle even the most skillful of physicians. * * *."

---

[4] A fourth audiogram, taken in March 1978, confirmed that petitioner's hearing had improved slightly since the March 1976 test. For convenience, we summarize the results of petitioner's four hearing evaluations as follows:

| Date | Extent of Disability |
|---|---|
| January 17, 1972 | 34.3 |
| March 17, 1976 | 37.4 |
| May 27, 1977 | 32.6 |
| March 20, 1978 | 33.3 |

[341]

Uncertainties as to the cause and date of onset of chronic occupational maladies make the assignment of liability to any one employer difficult and somewhat arbitrary.

The Court of Appeals confronted this problem in *Mathis v. SAIF,* 10 Or App 139, 499 P2d 1331 (1972). The claimant in that case suffered from asbestosis, which he had contracted during the course of a 31-year career as an asbestos worker. His final job in the trade lasted only four months, at the end of which he was advised by a physician to retire from that line of work. A medical review board concluded that claimant's last job involved some exposure to asbestos, but that "Exposure to asbestos in years past with a different employer was no doubt far more important in the causation of his disease * * *." 10 Or App at 143-44.

The Oregon Occupational Disease Law does not provide for the apportionment of liability between several employers. Thus, the Court of Appeals in *Mathis* had to decide which of the claimant's several employers should bear the entire burden. The court resolved that question by adopting the so-called "last injurious exposure rule," stated by Professor Larson as follows:

> "In the case of occupational disease, liability is most frequently assigned to the carrier [or employer] who was on the risk when the disease resulted in disability, if the employment at the time of disability was of a kind contributing to the disease * * *.
> "* * * * *.
> "It goes without saying that, before the last-injurious-exposure rule can be applied, there must have been some exposure of a kind contributing to the condition. So, if a silicosis claimant had been transferred to outside work or to work in a place where dust conditions were not harmful, the carrier on the risk during the later period will not be held liable. But, once the requirement of some contributing exposure has been met, courts applying this rule will not go on to weigh the relative amount or duration of the

exposure under various employers and carriers.
* * *." 3 Larson, Workmen's Compensation Law §
95.2l (1971), quoted in *Mathis, supra,* 10 Or App at
144-45.

The current edition of Larson cites 22 jurisdictions
which follow the last injurious exposure rule in occu-
pational disease cases.[5] We did not review the *Mathis*
decision, but the reasons cited by the Court of Appeals
for adopting the rule are persuasive to us. Claimants
in the position of the petitioner need to know with
which employer or carrier to file a claim. ORS
656.807(1) provides, in part:

> "* * * [O]ccupational disease claims shall be void
> unless a claim is filed with the State Accident Insur-
> ance Fund or direct responsibility employer * * *
> within 180 days from the date the claimant becomes
> disabled or is informed by a physician that he is
> suffering from an occupational disease whichever is
> later."

The effect of this short limitations period is that a
claimant who files against the wrong employer may
lose his right to compensation entirely. The rule gov-
erning allocation of liability among several employers,
therefore, needs to be as definite as possible. When
only one employer is involved, the claimant must show
a causal relationship between workplace conditions
and his illness.[6] In the multiple employer situation,
however, such a "causality rule" would expose the
claimant to the risk of no recovery, if his initial judg-
ment as to which job had the strongest causal relation
to his illness proved faulty.

The inequity of denying a disabled worker his bene-
fits under the statute because he mistakenly filed
against the wrong employer influenced the Court of
Appeals to adopt the last injurious exposure rule.

---

[5] 4 Larson, Workmen's Compensation Law § 95.21, n 75 (1979 and Supp 1979).

[6] This requirement derives from the language of ORS 656.802(1)(a), which defines occupational disease as "Any disease or infection which arises out of and in the scope of the employment * * *."

Under the rule an occupational disease claimant must show that his condition arose "out of and in the scope of employment," ORS 656.802(1)(a), but he need not meet the often impossible burden of showing that workplace conditions at a specific time and place caused or materially aggravated his condition. The rule requires the claimant to show only that the employment environment during the relevant period *could have* been a contributory cause of the disease. That question is more susceptible to proof in a WCB proceeding than is the question of whether the workplace did cause the disease.

In this case all of the parties agree that liability should be determined according to the last injurious exposure rule. The dispute focuses on whether the employment environment after April 1976 could have contributed to petitioner's hearing loss. On this point there is conflicting evidence. EBI relies primarily on the results of petitioner's audiogram examinations, which indicated that between March 1976 and May 1977 his hearing improved slightly. EBI attributes this improvement to the remodeling of the manufacturing plant, and the issuance of earmuffs by the employer. Petitioner testified that the new shop was quiet in comparison with the old shop.

SAIF disputes the significance of the audiogram test results, as evidence that petitioner's hearing improved after March 1976. The 1977 examination was conducted two months after petitioner's retirement. SAIF presented evidence that time away from the noise reduced the severity of petitioner's hearing loss and that a test taken just before petitioner's retirement would not have indicated any improvement. Even after the shop renovation petitioner spent 50 per cent of his workday in close proximity to noisy machinery. Moreover, petitioner testified that he could not wear the earmuffs when he was welding. A 1978 letter from petitioner's physician, Dr. Smith, stated that the medical evidence is "quite compatible with noise exposure over the last several years."

The referee who presided over the WCB hearing held that the last injurious exposure rule applies, and that petitioner suffered exposure to conditions which could cause the disease during the time that EBI was on the risk. Accordingly, he assigned the claim to EBI for payment. Upon review, the WCB reversed. The ultimate conclusion of the Board was that petitioner did not suffer exposure after April 1976 to the kind of noise that could cause a hearing loss. In reaching that conclusion, however, the Board may have misconstrued the last injurious exposure rule. At one point the opinion states:

> "The Board finds no medical evidence which indicates that claimant's employment environment after April 1976 contributed to his hearing loss, therefore, claimant has not sustained his burden of proving medical causation."

Under the last injurious exposure rule the claimant does not have the burden of proving medical causation. He need only prove that the employment environment could have contributed to the hearing loss. This distinction is critical to petitioner's case, and the statement quoted above impeaches the entire holding of the Board.

The opinion and order of the referee indicates that the referee correctly applied the last injurious exposure rule to the facts as he found them.[7] Were the function of the WCB limited to correcting errors of law we would remand the case with instructions to reinstate the order of the referee. ORS 656.295 has been interpreted, however, to require de novo review by the Board of factual as well as legal questions, based on the record transmitted by the referee. *Coday v. Willamette Tug & Barge*, 250 Or 39, 42-43, 440 P2d 224 (1968). The factual questions in any case depend, of course, on the law to be applied. In this case the

---

[7] The dispositive finding by the referee was that "claimant's exposure during the time EBI was on the risk was 'of a nature which causes the disease' * * *."

Board's misinterpretation of the last injurious exposure rule may have prejudiced its findings of fact. In order to give the employer the de novo review specified by the statute, we conclude that the Board must have another opportunity to decide whether the employment environment from April 1976 to petitioner's retirement could have contributed to his hearing loss.

Our decision to remand the case for reconsideration by the Board requires us to reach the petitioner's second assignment of error, a challenge to the dismissal of petitioner's claim against SAIF. Prior to the hearing on petitioner's claim, he requested and the referee ordered the joinder of SAIF. At the hearing, counsel for SAIF raised two procedural defenses, both founded upon ORS 656.807(1).[8] The first defense was that the referee lacked jurisdiction over SAIF, because petitioner had never filed a claim against SAIF. The statute provides that all occupational disease claims shall be void unless a claim is filed with SAIF or with the direct responsibility employer. Secondly, SAIF argued that petitioner did not file a claim against SAIF within the statutory limitations period. In addition to these procedural defenses, SAIF denied its liability under the last injurious exposure rule.

The referee held that neither of SAIF's procedural defenses had merit.[9] SAIF had no occasion to appeal these conclusions to the Board, because the referee ultimately held that the employer is liable under the last injurious exposure rule. The Board reversed the referee and held that the employer is not liable. As an afterthought, with no explanation, the Board held that SAIF is not liable either. Since SAIF did not appeal from the decision of the referee, we must assume that the Board accepted the procedural defenses which SAIF raised, unsuccessfully, before the referee.

---

[8] The relevant text of ORS 656.807(1) appears at page 5, *supra.*

[9] In view of the conclusions stated below, we need not discuss the referee's reasons for rejecting SAIF's arguments on jurisdiction and timeliness.

The language of ORS 656.807(1) is susceptible to more than one interpretation. It could be read to give workers the option of submitting claims to either the employer or SAIF. We will assume, without deciding, that when the employer is a contributing employer ORS 656.807(1) requires the worker to file his or her claim with SAIF.

Petitioner presents the hybrid case of a worker whose employer was both a contributing and a direct responsibility employer, at different times. Under the statutory scheme petitioner should have filed against SAIF *and* the employer. In the circumstances of this case, however, petitioner's understandable confusion as to his statutory obligations is not fatal to his claim against SAIF. ORS 656.807(4) states: "The procedure for processing occupational disease claims shall be the same as provided for accidental injuries under ORS 656.001 to 656.794." The worker who suffers an accidental injury must notify his or her employer within 30 days after the accident. ORS 656.265(1). Notice to the employer serves the same function as filing a claim under the Occupational Disease Law. The failure to provide timely notice bars a claim, unless:

"(a) The contributing employer or direct responsibility employer had knowledge of the injury or death, or the fund or direct responsibility employer *has not been prejudiced by failure to receive the notice;* * * *." (Emphasis added.) ORS 656.265(4)(a).

We can think of no reason to deny occupational disease claimants the same excuses for late or deficient filing as are available to injured workers under the Workers' Compensation Law. The Court of Appeals in *Gronquist v. SAIF,* 25 Or App 27, 547 P2d 1374, *rev den* (1976), held ORS 656.265(4), relating to accidental injuries, was made applicable by ORS 656.807(4) to claims arising under the occupational disease law. It stated:

"* * * Any other interpretation would have to be based on the conclusion that the legislature intended to deny a [worker] with an occupational disease claim

[347]

the right clearly granted to a [worker] with an accidental injury claim. We find nothing in the statutory scheme which warrants such a conclusion." 25 Or App at 31.

SAIF did not even argue that it was prejudiced by petitioner's failure to file a formal notice of claim against SAIF. In several cases the Court of Appeals has held that the employer bears the burden to prove that it was prejudiced by untimely notice of an accident. *Widener v. La-Pac. Corp.,* 40 Or App 3, 6, 594 P2d 832, *rev den* (1979); *Satterfield v. Compensation Dept.,* 1 Or App 524, 528, 465 P2d 239 (1970). These holdings are consistent with our rule that provisions of the Workers' Compensation Law should be interpreted liberally in favor of the worker. *Burkholder v. S. I. A. C.,* 242 Or 276, 283, 409 P2d 342 (1965); *Livingston v. State Ind. Acc. Comm.,* 200 Or 468, 472, 266 P2d 684 (1954). It also puts the burden on the party best able to come forward with evidence to establish prejudice.

Since SAIF made no showing of prejudice stemming from the irregular procedure used by petitioner to draft SAIF into the proceeding, we hold that the WCB has jurisdiction over SAIF, and that petitioner's claim must be assigned to SAIF for payment, if the Board finds that petitioner did not suffer exposure after April 1, 1976, to an employment environment which could have been a contributory cause of his hearing loss.

Reversed and remanded to the Court of Appeals with instructions to remand to the Workers' Compensation Board.