Argued and submitted June 15, affirmed August 24,
petitioner's reconsideration allowed; former opinion withdrawn;
affirmed (54 Or App 620, 635 P2d 1053) November 9, 1981,
petitioner's reconsideration allowed; former opinion modified
and adhered to (55 Or App 638, 639 P2d 137) January 25,
petition for review denied April 27, 1982 (293 Or 103)

In the Matter of the Compensation of
Shirley B. Johnson, Claimant.
JOHNSON,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 79-7925, CA A20259)

633 P2d 17

Samuel A. Hall, Jr., Eugene, argued the cause for petitioner. On the brief were Allan H. Coons, and Coons & Hall, P. C., Eugene.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

## ROBERTS. J.

The issues in this workers' compensation case are, first, whether claimant timely filed her occupational disease claim and, second, whether claimant established by a preponderance of the evidence that her disease was compensable. The referee found that claimant had established a compensable occupational disease but held that her claim was not timely filed under ORS 656.807(1), because it was filed more than 180 days following the date claimant became disabled or was informed by a physician that she was suffering from an occupational disease. The Workers' Compensation Board (Board) found that claimant had timely filed her claim but had not demonstrated that her occupational disease was worsened by her work for the subject employers. On *de novo* review, ORS 656.298(6), we find the referee was correct on the timeliness issue. We therefore do not reach the compensability issue.

Claimant is a 34-year old nurse's aide who injured her back while employed in a California hospital on November 6, 1973. She suffered three fractured vertebrae, underwent an operation for a spinal fusion and missed a year of work. She then resumed work as a nurse's aide at another hospital, where she had continuing back pain and missed two weeks of work in the next year. She then moved to Roseburg, Oregon, and went to work at Douglas Community Hospital in July, 1976. Her work there involved the lifting, turning and bathing of patients, some wearing casts which weighed as much as 40 pounds. She first consulted a physician in Oregon concerning her back pain in June, 1977. Sometime around the end of February or early March, 1978, claimant suffered extreme pain after one lifting incident and was advised by her physician, Dr. Streitz, an orthopedic surgeon, not to return to work.

Dr. Streitz had submitted his bills and reports to the California insurer responsible for claimant's 1973 claim. He wrote to the insurer, Safeco, on March 17, 1978, that claimant had been unable to continue her nursing activities since February 26, 1978, and was "terminated or quit." He advised them "I consider her disabled from 2/26/78 on until she can be evaluated by Orthopaedic Consultants in Portland." After reviewing the report from

Orthopedic Consultants, Dr. Streitz wrote to Safeco, on November 8, 1978, advising them he concurred in the consultants' diagnosis of pseudoarthrosis. He found claimant "medically stable and stationary" and freed her to return to work in her former capacity, with a limitation on heavy lifting.

In February, 1979, at claimant's mother's request, Dr. Streitz referred claimant to an orthopedist in Medford, Dr. Wilson. He performed additional surgery on claimant in June, 1979. She then filed an occupational disease claim with the Oregon Workers' Compensation Department on July 30, 1979, apparently on the advice of her attorney. The California insurer had denied any payment after November 7, 1978, five years following her injury in that state. SAIF denied the claim on September 7, 1979.

ORS 656.807(1), which establishes the time frame for filing of claims for occupational disease, provides that:

> "Except as otherwise limited for silicosis, all occupational disease claims shall be void unless a claim is filed with the State Accident Insurance Fund Corporation or direct responsibility employer within five years after the last exposure in employment subject to the Workers' Compensation Law and within 180 days from the date the claimant becomes disabled or is informed by a physician that he is suffering from an occupational disease, whichever is later."

The referee found that claimant became disabled on February 26, 1978, and that March 17, 1978, was the date on which she was informed by her physician that she was suffering from an occupational disease. Finding claimant did not come within the exceptions to the 180-day filing requirement for occupational diseases,[1] allowed in *Inkley v. Forest Fiber Products Co.,* 288 Or 337, 605 P2d 1175 (1980),

---

[1] In *Inkley,* the Supreme Court held that ORS 656.265(4), providing that failure to timely file notice does not bar a claim where the employer has knowledge of the injury or the insurer has not been prejudiced by the failure to provide notice, applies to occupational disease claimants as well as workers filing a claim for an accidental injury. The referee here found the employer did not have knowledge of the claimant's condition and found that, although SAIF had not specifically claimed prejudice, it had been prejudiced by the passage of time alone.

the referee then held claimant had a duty to file a claim by September 13, 1978, which she had failed to do.[2]

The Board, relying on *Templeton v. Pope and Talbot, Inc.,* 7 Or App 119, 490 P2d 205 (1971), held that claimant "was never given enough information to render her responsible for the filing of an Oregon claim." It stated:

"Dr. Streitz advised claimant that he was treating her for a continuation of her California claim; in fact, all his reports were sent directly to SAFECO, the carrier at the time of her injury in California in 1973. Dr. Wilson did not see claimant until March 27, 1979; therefore, regardless of what he told her, the claim was filed within 180 days of that visit. Claimant was not advised that her condition was a result of her work at Douglas Community Hospital until she talked with her attorney in July 1979. Claimant was well within the statutory time for filing an occupational disease claim on July 30, 1979, based on the facts in this case."

In *Templeton,* we held that the claimant had timely filed an occupational disease claim even though he had suffered from shoulder and neck problems for about two years before filing because, while the record disclosed

"[T]hat during this period he had been told by doctors that there was a relationship between his work and his physical difficulties, [it] fails to disclose any evidence that any doctor at any time prior to the filing of the claim specifically told him, simply and directly, that his conditions arose out of his employment, or anything clearly to that effect." 7 Or App at 120-121.

Following *Templeton,* in *Frey v. Willamette Industries,* 13 Or App 449, 509 P2d 861 (1973), we said that the limitations on an occupational disease claim ran from the date claimant, who was diagnosed as having high blood pressure and hypertension, was told by his doctor that he should not return to his employment. The record in the case before us shows that claimant admitted that Dr. Streitz told her in March, 1978, that she had an occupational disease or

---

[2] In addition, the order of the referee awarded claimant temporary total disability from July 30, 1979 to September 7, 1979, a 15 percent penalty for unreasonable refusal to pay, and a $150 attorney fee. The Board affirmed that portion of the order and that is not appealed.

disability[3] that was brought on by her work at Douglas Community Hospital:

"Q   Did Dr. Wilson ever tell you you had an occupational disease?

"A   Well, yes, he said — that's what it was.

"Q   How about Dr. Streitz, did he ever tell you that?

"A   Yeah, he said that my pain was brought on by my employment.

"* * * * *

"Q   Did Dr. Streitz say your pain was brought on by your employment at Douglas Community Hospital?

"A   Yes.

"Q   Did Dr. Streitz ever tell you that you were disabled?

"A   Well, I don't think he put it like that. I think he said that he told me that I should not go back to work because of my disability.

"Q   When did he tell you that?

"A   March.

"Q   Of what year?

"A   '78.

"Q   When did Dr. Streitz first tell you that you had an occupational disease?

"A   Probably in March because he sent me to Portland in August."

She had earlier testified:

"Q   What advice did Dr. Streitz give you in terms of continuing your employment?

"A   He told me not to go back to work.

"Q   When was that?

"A   In March.

"Q   Of '78?

"A   Yeah."

The claimant's own testimony indicates she was told by her treating physician that the disability and her then-current employment were linked. In addition, the first letter from Dr. Wilson to Dr. Streitz following the latter's referral notes that "[A]t your direction she quit her job at the hospital and since that time has been working

---

[3] On redirect examination, claimant said Dr. Streitz spoke of her condition as a "disability," not an "occupational disease." It is not clear that *Frey* requires such linguistic precision.

part-time as a bartender for one of her friends." This letter was dated March 27, 1979. The record indicates Dr. Streitz last saw claimant on November 8, 1978. Sometime before that date, most likely between August and November of that year, claimant was told she had pseudarthrosis. The referee was correct; claimant knew, in March, 1978, that her problems with her back arose out of her employment at Douglas Community Hospital. She was diagnosed in August, 1978 as having pseudoarthrosis and discussed this with Dr. Streitz no later than November of 1978. Her occupational disease claim, filed in July, 1979, was not timely.

Although for different reasons, the Board's order is affirmed.

Affirmed.