In the Matter of the Compensation of
Alva L. Hacke, Claimant.

## UAC/KPTV OREGON TV, INC.,
*Petitioner,*

*v.*

## HACKE et al,
*Respondents.*

(86-14779, 87-11890, 87-14689, 87-18777;
CA A50305 (Control), A50302)
(Cases Consolidated)

792 P2d 1219

Richard Wm. Davis, Portland, argued the cause for petitioner. With him on the brief was Davis & Bostwick, Portland.

John D. Peterson, Hillsboro, argued the cause for respondent Hacke. With him on the brief was Brink, Moore, Brink & Peterson, Hillsboro.

Paul L. Roess, Portland, argued the cause for respondent Liberty Northwest Ins. With him on the brief was Acker, Underwood, Norwood & Hiefield, Portland.

Mildred J. Carmack, Portland, argued the cause for respondent Pacific Indemnity. With her on the brief were Regina Hauser and Schwabe, Williamson & Wyatt, Portland.

David L. Runner, Assistant Attorney General, Salem, argued the cause for respondent SAIF Corporation/KPTV Oregon TV, Inc. On the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Christine Chute, Assistant Attorney General, Salem.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

## DEITS, J.

Underwriters Adjusting Company (UAC) seeks review of a Workers' Compensation Board order holding it responsible for claimant's occupational disease claim. We affirm.

Claimant worked for television station KPTV for 29 years. He spent the first twelve years as a floor director for the news program and worked as a news camera operator for the last 17 years. As camera operator, he was required to carry heavy camera equipment, often for long distances, up and down stairs and over rough terrain. Claimant did not have any preexisting injuries to his knees when he began employment at KPTV. However, by 1978, after 9 years as a camera operator, he began to complain of pain in both knees. An arthroscopy was performed that year on his left knee and again the following year on the same knee. In December of 1979, claimant suffered an injury to his left knee while covering a news story. Surgery was performed, but he did not file a workers' compensation claim. Another arthroscopy was performed on the left knee early in 1980. In August, 1980, he had surgery on his right knee. In April, 1981, he injured his left knee in a skiing accident. He continued to have problems with his knees and had surgery again in May, 1986. In July, 1986, he was unable to continue working due to pain in both knees. He retired in September, 1986.

During claimant's employment with KPTV, the station's insurer changed a number of times. SAIF was its insurer from the time that claimant began his employment until April, 1983. Liberty Northwest then provided insurance until April, 1985, followed by Pacific Indemnity until February, 1986. UAC was then the insurer until claimant left. In 1987, claimant filed two compensation claims, an occupational disease claim for his bilateral knee condition and a claim for the injury to his left knee that he suffered in 1979. The occupational disease claim was denied by all of the insurers, and SAIF denied the claim for the 1979 injury. The Board concluded that SAIF was responsible for the 1979 left knee injury.[1] It also concluded that the knee condition was an

---

[1] SAIF does not contest the Board's holding on the 1979 injury.

"occupational disease" and held that, although SAIF was initially responsible for the condition, responsibility shifted to UAC, because claimant's work activities while UAC was on the risk independently contributed to the worsening of his condition.

■■ UAC's first assignment of error is that there was not substantial evidence to support the Board's finding that claimant has an "occupational disease." In order to prove an occupational disease claim, a claimant is required to show by a preponderance of the evidence that work activities were the major contributing cause of the disease. *Dethlefs v. Hyster Company,* 295 Or 298, 310, 667 P2d 487 (1983). Claimant's treating physician stated that claimant's work was "the significant contributing factor to the deterioration and worsening of [his] knee." There was no contrary medical opinion. The evidence showed that claimant's daily work activities were quite strenuous, that his knee progressively got worse and that there were no comparable strenuous off-work activities. Claimant did have a ski accident in 1981, but the medical records show that it did not cause any long term problems, and his treating physician was aware of the accident when he concluded that claimant's work was "the significant contributing factor." The Board's conclusion that claimant's knee condition was an occupational disease was supported by substantial evidence.

■■ In its second assignment of error, UAC argues that there was not substantial evidence to support the Board's conclusion that UAC is responsible for claimant's current condition. Under the last injurious exposure rule, the *last employer* where the work activities independently contributed to a worsening of a claimant's condition, or the last insurer on the risk, is assigned full responsibility for that condition.[2]

---

[2] The dissent contends that the last injurious exposure rule is inapplicable here because the case involves successive insurers, but only one employer. However, in *Inkley v. Forest Fiber Products Co.,* 288 Or 337, 605 P2d 1175 (1980), where there was only one employer, the last injurious exposure rule was applied to determine liability as between the employer, who was a direct responsibility employer under *former* ORS 656.017(1), and SAIF, who had previously been on the risk. Moreover, in *Bracke v. Baza'r,* 293 Or 239, 244, 646 P2d 1330 (1982), it was held that the rule applies where "successive employers or insurers" might be liable. It has not been held that the rule does not apply when one employer, but successive insurers, are involved. The dissent asserts that *Garcia v. Boise Cascade Corp.,* 309 Or 292, 787 P2d 884 (1990), *Stovall v. Sally Salmon Seafood,* 306 Or 25, 757 P2d 410 (1988), and *Boise Cascade Corp. v. Starbuck,* 296 Or 238, 675 P2d 1044 (1984), overruled *Inkley* and *Bracke* on this issue. They do not. Furthermore, the reason for the rule, namely to reduce litigation, to remove the burden on claimants, to apportion liability between responsible parties and to provide certainty in the compensation system, apply equally to successive insurers.

*Spurlock v. International Paper Co.,* 89 Or App 461, 465, 749 P2d 611 (1988). UAC argues that there was no evidence that anything occurred during UAC's period of coverage that independently caused his condition to worsen. We disagree. In May, 1986, claimant's treating physician reported that claimant was unable to continue working because of the pain in his knees. The physician also noted that claimant reported that the pain had recently become worse, because employer was pressuring him to push harder, and that he had to carry a new camera and recorder unit that weighed more than the equipment that he had previously been required to carry. Although claimant's work activities throughout his employment undoubtedly contributed to his condition, under the last injurious exposure rule, if the work activities while at the *last employer* independently contributed to the worsening, full responsibility falls on that employer, even if the exposure was very brief. *Runft v. SAIF,* 303 Or 493, 739 P2d 12 (1987). There was substantial evidence to support the Board's conclusion that claimant's work activities while UAC was on the risk independently contributed to a worsening of his condition.

UAC's third assignment of error is that that portion of the Board's order concerning SAIF's responsibility for the occupational disease is unclear. It contends that the Board held SAIF responsible for the occupational disease claim but, nevertheless, ordered UAC to pay the claim. UAC misinterprets the Board's order. The Board did not hold SAIF responsible for the disease claim. The order affirmed SAIF's *de facto* denial of the claim.[3] The Board noted that SAIF was initially responsible for the disease claim until "subsequent work activities independently contributed to a worsening of claimant's condition." However, it went on to hold that claimant's work activities while UAC was on the risk independently contributed to the worsening and, therefore, UAC was responsible for the claim.

■     UAC's last assignment is that the Board erred in not concluding that Liberty Northwest and Pacific Indemnity

---

[3] Because UAC erroneously thought that the Board's order held SAIF responsible for the occupational disease claim, UAC argued that the Board should have overturned SAIF's denial of that claim and awarded attorney fees to claimant's attorney for overturning that denial. In view of our holding that the Board did not *in fact* hold SAIF responsible for that claim, this argument is without merit.

should also be responsible for the claim. UAC contends that, if the occupational disease claim can be reassigned to UAC from SAIF, then the two carriers who were on the risk between SAIF and UAC should also share the responsibility. However, Oregon law does not provide for apportionment of responsibility when an occupational disease has worsened over time. As stated in *Runft v. SAIF, supra,* 303 Or at 500:

> "As a rule of assignment of responsibility, the last injurious exposure rule assigns full responsibility to the last employer at which the claimant could have been exposed to the disease-causing substance. This is true no matter how brief or insignificant the possible exposure at the last such employer. * * * For this reason, the rule can be extremely arbitrary in a particular case, but this arbitrariness is mitigated in the long run as responsibility is spread proportionately among employers by operation of the law of averages. *See Bracke v. Baza'r, supra,* 293 Or at 249-50."

As discussed above, the Board's conclusion that claimant's work activities while UAC was on the risk independently contributed to the worsening was supported by substantial evidence and, therefore, full responsibility shifted to UAC.

Affirmed.

**JOSEPH, C. J.,** dissenting.

I dissent, because the majority is confused about the issues and, ultimately, applies an incorrect rule of decision.

It is critical to note certain things about this case that are either misunderstood or overlooked by the majority:

1. UAC disputes the Board's finding that claimant has an occupational disease.

2. UAC disputes its responsibility for claimant's current condition, as between it and SAIF (and other insurers that have been employers' carriers).

3. Only *one* employer is involved.

4. Whatever else UAC and SAIF dispute, they agree that the Board's order is incomplete, unclear and, possibly, contrary to law, insofar as it seems to hold SAIF responsible in some mysterious way for the initial stages of claimant's occupational disease but still holds UAC ultimately responsible.

I agree with the majority that there is substantial evidence to support the Board's conclusion that claimant has an occupational disease. However, given that there is only one employer involved, the majority is wrong in applying the last injurious exposure rule to this case. As the Supreme Court has recently said in *Garcia v. Boise Cascade Corp.*, 309 Or 292, 787 P2d 884 (1990):

> "Finally, claimant has argued before the Board, the Court of Appeals, and this court, for application of the last injurious exposure rule. That rule might render employer, as claimant's last employer, liable for claimant's degenerative back condition if claimant established that the condition was caused by [*sic*] one of two or more places of employment. *See Stovall v. Sally Salmon Seafood*, 306 Or 25, 31, 757 P2d 410 (1988); *Boise Cascade Corp. v. Starbuck*, 296 Or 238, 675 P2d 1044 (1984); *Bracke v. Baza'r*, 293 Or 239, 646 P2d 1330 (1982)." 309 Or at 296.

*Stovall* and *Starbuck* together put to rest the misunderstanding dragged into the law by *Inkley v. Forest Fiber Products Co.*, 288 Or 337, 605 P2d 1175 (1980), that the last injurious exposure rule has anything to do with the allocation of liability between successive insurers. It has only to do with the liability between different employers. In the single employer case, the allocation rule should be simple: The carrier on the risk when the disease becomes disabling is responsible.

I cannot tell from the Board's order whether it actually applied the last injurious exposure rule, although the words it used indicate that it did. However, that is only one part of a very confusing order. That confusion has contributed to some of the confusion in the briefing in this case and, apparently, to the confusion in the majority opinion. I believe that we should say simply that the Board's reasoning (without saying that we fully understand it) does not lead to its result and remand the matter to the Board for reconsideration.

In fairness to the majority, I must acknowledge that its analysis of UAC's third assignment of error relating to SAIF's responsibility for claimant's condition pretty well tracks in its confusion the confusion of the Board. If UAC was on the risk when claimant's occupational disease became disabling, then UAC is responsible. The trouble is that SAIF had earlier accepted responsibility for claimant's bad knees. The

Board made a mishmash out of the allocation of responsibility. We cannot possibly straighten it out on this substantial evidence review. We can and should remand the matter to the Board.