In the Matter of the Compensation of
Denise Kupetz, Claimant.

## AETNA CASUALTY COMPANY
and First Security Realty,
*Petitioners,*

*v.*

Denise KUPETZ,
*Respondent.*

(WCB No. 88-02897; CA A60868)

810 P2d 399

Allen W. Lyons, Portland, argued the cause for petitioners. With him on the briefs was Scheminske & Lyons, Portland.

Karen M. Werner, Eugene, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

Deits, J. dissenting.

## NEWMAN, J.

Employer seeks review of a Workers' Compensation Board order that adopted and affirmed the referee's order allowing claimant's claim. We affirm.

The referee made these findings:

"Claimant has had temporomandibular joint [(TMJ)] problems since 1979. She had surgery for this problem in July 1982 and again in April 1984.

"Claimant worked as a loan officer for the employer [First Security Realty] for about three and a half years. As part of her work, she inspected homes under construction, especially those homes in the Hillsboro area near her home. She often inspected the homes in Hillsboro on her way to or from work. Occasionally, claimant worked on Sundays, her scheduled day off work, but she did not work Saturdays because she was a Seventh Day Adventist and it was against her religion to work from sundown on Friday to sundown on Saturday. When she inspected homes, she usually filled out an inspection sheet. She might also inspect a home after the loan money was dispersed [sic] to see if the homes were marketable and there was no vandalism.

"In early October 1984, claimant worked on an account for a contractor named Mr. Bracco. He was unreliable and claimant's employer was particularly careful about seeing that he had performed his work in order to protect their loan.

"On October 5, 1984, in the morning, on her way to work, claimant inspected one of Mr. Bracco's houses in a development within a mile of claimant's home. Mr. Bracco was not there. Although Mr. Bracco had not hung two cabinets and two closet doors, plumbed one toilet, installed a wall heater or completed the finished grading, she completed an in-house inspection record that indicated that the work was 100 percent completed. Completion of this form authorized payment of the loan balance.

"Mr. Bracco brought in a request for withdrawal of contract funds to claimant's office on the afternoon of October 5, 1984. Claimant's supervisor approved the draw because the inspection card indicated that the work was complete, but claimant did not issue the check for the balance of the loan account on October 5, 1984, because the items not listed on the inspection record were not done. She informed Mr. Bracco that he needed to complete the items before payment.

"On Sunday, October 7, 1984, claimant and her husband

rode their bikes from their house to the construction project. Claimant briefly looked at another home that had been completed and then rode to the Bracco house to see if the contractor had completed the tasks that had not been done on October 5, 1984. Claimant went in the house and checked on the contractor's work. She then got on her bike and fell on loose gravel, injuring her jaw, elbow, nose and knee.

"On October 7, 1984, claimant called a co-employee and told her that she had injured herself when she fell off a bike. She told her supervisor and other employees about her injury from falling from a bike on Monday October 8, 1984. She did not tell anyone that the injury occurred while she [was] on a bike trip to inspect a contractor's home, that she had inspected the Bracco home on the weekend or that her injury was in any way connected to her job. Claimant regularly received extra pay for overtime work, but did not request payment for her inspection on October 7, 1984.

"As a result of claimant's October 7, 1984 accident, she had additional TMJ problems. She told her physician about injuring her jaw in a bike accident, but did not mention the location of the accident or indicate that the accident occurred while she was inspecting a home for her job. She had another surgery in November 1984. She had difficulty getting Blue Cross to cover her medical expenses, because she had enrolled for the insurance during a non-open enrollment period as a result of her husband's loss of job insurance. She aggressively pursued coverage of her TMJ medical bills by Blue Cross.

"Claimant left her employment with the employer's predecessor in February 1987. She worked at another company until May 1987, when she quit because of a personality conflict with her boss. She had additional TMJ surgery in August 1987. She has continued to have problems and need treatment for her jaw.

"Sometime in November 1987, claimant spoke with her attorney on another matter and he suggested she file a Workers' Compensation claim. Claimant filed an 801 form on December 24, 1987. On January 21, 1988, the insurer denied claimant's claim on the ground that her injury did not occur on the job and the medical evidence indicated that she had a pre-existing condition.

"The only medical evidence in this case, provided after the denial was issued, has linked claimant's TMJ problems after October 1984 to her October 7, 1984 bike accident."

The referee found that claimant and her husband

were credible. He concluded that claimant's injury arose in the course and scope of her employment, because the bicycle accident occurred when she was leaving the Bracco house after she had inspected it on October 7, 1984. He concluded that there was no question about medical causation, because the only medical evidence in this record—that of claimant's treating physician and a consulting physician—showed that claimant's TMJ problems after October, 1984, were linked to the bike accident that occurred on October 7. The referee also concluded that employer had failed to prove that it was prejudiced by the late filing. The Board affirmed and adopted the order of the referee. It also stated that it agreed that insurer had failed to establish prejudice as a result of claimant's late filing.[1]

■■ Employer assigns as error the Board's determination that employer did not establish that claimant's late filing actually prejudiced it. We will affirm if that finding is reasonable on the whole record and, therefore, is supported by substantial evidence. *Garcia v. Boise Cascade Corp.,* 309 Or 292, 787 P2d 884 (1990).[2] ORS 656.265(1) requires that a claimant give an employer notice of an accident resulting in an injury within 30 days. ORS 656.265(4) provides:

"Failure to give notice as required by this section bars a claim under ORS 656.001 to 656.794 unless:

"(a) The employer had knowledge of the injury or death,

---

[1] Employer assigns as error that the Board affirmed the referee's order without opinion and, therefore, failed to set forth findings or a reasoned explanation to support its conclusion. The Board's order, however, is adequate for review. When the Board affirms the referee, it is not required to write its own findings and conclusions; it may adopt those of the referee. *Armstrong v. Asten-Hill Co.,* 90 Or App 200, 752 P2d 312 (1988).

[2] In *Garcia,* the Supreme Court said:

"If a finding is reasonable in light of countervailing as well as supporting evidence, the finding is supported by substantial evidence. *See Armstrong v. Asten-Hill Co.,* 90 Or App 200, 206, 752 P2d 312 (1988).

"Here, the Court of Appeals did not evaluate all the evidence to determine whether a reasonable person could have made the findings that the referee and the Board made on the evidentiary record. Instead, the court concluded that certain evidence supported findings different from those reached by the referee and that the referee (and the Board) thus erred. The Court of Appeals effectively has substituted its view of the evidence, contrary to ORS 183.482(8)(c). That was an incorrect application of the substantial evidence standard of review." 309 Or at 295.

or the insurer or self-insured employer has not been preju-
diced by failure to receive the notice."

The burden is on the employer to prove prejudice. *Inkley v.
Forest Fiber Products Co.,* 288 Or 337, 348, 605 P2d 1175
(1980). Passage of time alone is not sufficient to establish
prejudice; the employer must show actual prejudice. *Argonaut
Ins. Co. v. Mock,* 95 Or App 1, 6, 768 P2d 401, *rev den* 308 Or 79
(1989). It must offer facts, not merely conclusory statements
or speculation, to make its showing. *Nat. Farm. Ins. v.
Scofield,* 57 Or App 23, 26, 643 P2d 1290 (1982).

It is important to identify precisely in what way
employer asserts that it was actually prejudiced. It argues that
it was hampered in its ability to investigate the case to deter-
mine whether the accident was work-related, because two co-
employees testified that they could not remember whether
claimant had told them that the accident occurred at the job
site but they did not think that she had, and claimant's super-
visor could not remember what she had told them.

The Board made findings concerning what claimant
told her co-employees on October 7 and 8, 1984, about her
injury of October 7. It found that she did *not* tell them that the
accident occurred on the job. Employer does not challenge
that finding. Indeed, two co-employees, employer's witnesses,
testified consistently with claimant's testimony that she had
*not* told them where she was injured or that the accident
occurred while she was inspecting the house. What employer
seems to suggest is that what the other co-employees forgot,
and would have testified to if they could have remembered it,
is that claimant told them that the bike accident had *not*
occurred on the job. That is pure speculation. On this record,
the Board could reasonably conclude that employer did not
show that it was prejudiced by the failure of some co-employ-
ees to recall what claimant had said about the accident.

■ Although the documentation showed that claimant
certified the house as 100 percent complete on Friday, October
5, she plausibly explained why she inspected the house again
on Sunday, October 7. She testified that, on October 5, there
were some house details still to be completed. Her supervisor
corroborated claimant's testimony in part when he testified
that houses sometimes were certified as 100 percent complete
when details still remained unfinished. Moreover, employer

does not challenge the Board's finding that some details of the house were still unfinished after claimant had certified it as complete, that the account with the building contractor was a problem account and that claimant issued the check after the certification in order to induce the contractor to complete the building. Employer also does not challenge the Board's finding that claimant did not issue the check on October 5 because certain work was unfinished. The builder, Bracco, could have confirmed or disputed parts of claimant's testimony, but employer made no effort to locate Bracco or to establish that he could not be located or be produced as a witness.

The documentation also showed that claimant had not claimed overtime for the inspection on October 7, although it was her usual practice to claim overtime for such inspections. Claimant does not dispute the showing in the documentation that she did not claim overtime. She testified, however, that, at times, rather than report overtime, she took compensatory time for overtime work. Her supervisor corroborated that testimony. Claimant explained the seeming discrepancies between her version of events and the documentary evidence. The Board could rationally conclude that the available documentation did not add significant weight to the lack of recollection of some of her co-employees.

In sum, if claimant had filed her claim within 30 days after the accident and had testified credibly to the same effect as she did here, employer would have been left with only the same impeaching factors that the Board could reasonably find were inadequate to show actual prejudice: that she certified the house as 100 percent complete, that she did not file a claim for overtime and that she did not tell anyone that she fell when she was inspecting the house. Essentially, therefore, employer is asserting that claimant is not credible. The referee and the Board, however, found that claimant and her husband were credible. The finding of credibility is, of course, central. The referee observed their demeanors, and the credibility finding is based, at least in part, on those observations. Claimant's testimony was plausible and internally consistent and was corroborated in part by her supervisor. Moreover, the issuance of the check to the builder on Monday, October 7, is consistent with her testimony. The Board's finding that claimant and her husband were credible binds us.

■ Employer also argues that the three-year delay impaired its ability to ascertain the extent of claimant's injury and its relationship to a preexisting condition. It asserts that the faded memories of other employees hampered it from obtaining information about claimant's medical history. The basis of that assertion is that two employees, who work in the payroll department, testified that claimant had had some coverage problems with Blue Cross, the company's insurer. Neither witness could recall whether the problems were due to claimant's preexisting TMJ condition or some other cause. Both testified that they had no access now to the records of the earlier claim and that First Security Realty, employer, was now a different entity.

It is immaterial, however, that certain employees did not have access to claimant's records and that their memories had faded, because employer had access. It submitted as part of the record claimant's Blue Cross claim form for her surgery after the accident. Furthermore, claimant's complete medical history, dating back to 1980, including her treatment for TMJ before the accident, is part of the record.

■ Employer also argues that it was prejudiced by its inability to obtain a timely medical examination contemporaneous with the accident, because claimant had preexisting TMJ problems and it was also possible that intervening or nonemployment causes contributed to her condition after the bike accident. Employer put nothing in the record, however, to establish how failure to obtain a contemporaneous examination prejudiced it. Claimant's treating physician and a consulting physician said that her injury on October 7 was the sole and major contributing cause of her subsequent medical problems. Employer does not assert that the diagnoses were in any way inaccurate or that a physician of employer's choosing would have interpreted the data differently. The Board found:

> "The only medical evidence in this case, provided after the denial was issued, has linked claimant's TMJ problems *after* October 1984 to her October 7, 1984 bike accident." (Emphasis supplied.)

Employer never asked for a medical examination or for a physician of its own choosing to review claimant's records, and it offered no expert opinion on the impact of a new jaw injury on her preexisting TMJ condition. Employer offered *no*

evidence that supports its assertion that it was prejudiced because it could not obtain a medical examination shortly after the accident.

In the light of the whole record, including both the supporting and the countervailing evidence, the Board's finding that employer failed to show actual prejudice was reasonable. *See Garcia v. Boise Cascade Corp., supra.*

Affirmed.

**DEITS, J.,** dissenting.

The majority holds that the Board did not err in concluding that employer was not prejudiced by claimant's three year delay in filing her claim for workers' compensation. I disagree.

As the majority correctly points out, the claim here is not barred if employer has not been prejudiced by the failure to receive timely notice of the claim. ORS 656.265(4). The burden to prove that the delay has caused prejudice is on employer, and mere passage of time is not sufficient to meet that burden. *Argonaut Ins. Co. v. Mock,* 95 Or App 1, 768 P2d 401, *rev den* 308 Or 79 (1989). However, employer did more than that here. As we stated in *Argonaut,* 95 Or App at 6, "the passage of time may have an impact on the ability to make a timely investigation or to seek current medical treatment and examinations." That is exactly what employer asserts occurred here.

One of the issues in the case was whether claimant was inspecting a house at the time of the bicycle accident and was, therefore, acting within the scope of her employment. Four of claimant's co-workers and a former supervisor were witnesses at the hearing. Employer called three of those witnesses. They were asked whether claimant had told them at the time of the accident that she had injured herself while on the job. Two co-workers testified that they spoke with her the next day. They could not remember the details of their conversations, but recalled that she had not said that it happened on a job site. Another co-worker talked on the telephone with claimant on the afternoon of the accident, and she could not recall if claimant said where or what they were doing. Her supervisor testified that he could not remember anything about the specifics of her accident because it had occurred

almost four years before the hearing. Her co-workers' lack of recollection is particularly significant because, although it was claimant's usual practice to claim overtime for such inspections, the records showed that she had claimed no overtime for this work. Further, the documentation that was available concerning the house that claimant allegedly inspected showed that the house had been inspected in August and had been approved as complete two days before the October accident.[1]

The majority concludes that claimant offered a credible explanation for the inconsistencies in the records and, therefore, that employer was not prejudiced by the witnesses' inability to remember conversations that had occurred three years before the hearing. The point is, however, that we cannot know how the witnesses would have testified, had they been able to remember what was said at the time or what employer might have been able to discover if it had been able to conduct a timely investigation. The witnesses might have provided evidence that undermined claimant's credibility. It is these gaps in the witnesses' memories that prejudiced employer. Claimant's failure to file the claim until over three years after the accident interfered with employer's ability to determine whether the accident occurred in the course of her employment.

An additional issue at the hearing was the extent of claimant's injury and its relationship to a preexisting condition. Two of the witnesses had been responsible for payroll functions. They testified that claimant had filed a claim for her preexisting condition and had had some problems with the company's insurer, but they did not recall the details of the problems. They both stated that First Security, employer then, was a different entity now and that they now had no access to the records of the earlier claim. Although it is correct, as the majority points out, that many of claimant's past medical and insurance records are in the record, what is absent is the recollection of these co-employees as to the nature of claimant's problems that claimant had in obtaining

---

[1] The majority contends that employer was not diligent in pursuing all of the witnesses that it could because it did not call Bracco, the builder. However, the failure to call Bracco does not necessarily reflect a lack of diligence. His testimony was only necessary to rebut claimant's theory, raised for the first time at the hearing, that she was holding funds "over his head" to ensure that he had completed the house before giving him a check.

medical coverage. One of the co-employees testified that she could not remember the problems that claimant had in obtaining coverage for her TMJ before the accident, but that it may have been that the insurer excluded TMJ or that coverage was not available because the condition was preexisting. Again, this information may have undermined claimant's credibility and may have been pertinent to determining the relationship of claimant's preexisting TMJ condition and the bike accident.

Further, because of the delay in filing the claim, employer was unable to obtain its own medical examination contemporaneous with the accident. The majority concludes that this makes no difference, because claimant's physicians who examined and treated claimant concluded that, even though she had preexisting TMJ problems, all her jaw problems that developed after the bike accident were caused by the accident.

However, no one examined claimant at the time of the accident for the purpose of distinguishing the injury and its associated problems from the preexisting TMJ. Any examination made now likely would not reveal the effect, if any, of the preexisting condition. When a long-term condition is treated shortly before an injury and the same condition appears after the injury, it should not require medical testimony to show prejudice by the lack of a timely examination. Employer's inability to have claimant examined closer to the time of the accident seriously interfered with its ability to determine the relationship between her preexisting TMJ problems and her TMJ problems following the accident.

If, after reviewing all the evidence in the record, the Board's findings are "reasonable in light of countervailing as well as supporting evidence" in the record, then its findings are supported by substantial evidence. *Garcia v. Boise Cascade Corp.*, 309 Or 292, 787 P2d 884 (1990). Here, there was substantial countervailing evidence that, because of the delay in filing, employer was prevented from conducting a meaningful investigation of the claim and fully developing its case. The Board's conclusion that employer failed to establish that it was prejudiced is not reasonable in the light of countervailing, as well as supporting, evidence.

I would hold that employer did show that the passage

of time seriously impeded its ability to investigate this claim and that it was prejudiced by claimant's delay. Accordingly, I dissent.