695 F.2d 67
 Emma WELDON, Administratrix of the Estate of Monroe Weldon,
deceased, Appellant,
v.
The CELOTEX CORPORATION, Successor in interest to Panacon
Corporation and Philip Carey Manufacturing
Company, Inc., Appellees.
 No. 82-1245.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 18, 1982.
Decided Dec. 14, 1982.
 
 Edward Rubin (argued), Hamburg, Rubin, Mullin & Maxwell, Lansdale, Pa., for appellant.
 Michael J. Plevyak (argued), Malcolm & Riley, P.C., West Chester, Pa., for appellee The Celotex Corp.
 Before WEIS, BECKER and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In this negligence action plaintiff seeks damages for the death of her husband caused by exposure to asbestos on the job. In the alternative, she presents a claim for aggravation of the disease caused by the employer's failure to warn decedent after his employment ended of the risks to his health. At the time relevant to this appeal, the Pennsylvania Occupational Disease Act compensated victims of asbestosis and other specified diseases for disability or death occurring within three years after the date of their last employment. There can be no recovery at common law against an employer for a disease that is covered by the Act. Plaintiff contends that her claims fall outside the Act because her decedent did not develop asbestosis until twenty-five years after his employment ended. The district court held that the exclusive remedy provisions of the Act barred plaintiff's suit on both theories. We agree and affirm.
 
 
 2
 The complaint filed sought damages from The Celotex Corporation, successor-in-interest to decedent's former employer, under the Pennsylvania wrongful death and survival statutes. 42 Pa.Con.Stat.Ann. Secs. 8301, 8302 (Purdon Supp.1982). The district court at first denied, but later granted, defendant's motion to dismiss the complaint for failure to state a claim. Fed.R.Civ.P. 12(b)(6).
 
 
 3
 The facts in this case are not complicated. From 1952 to 1955, the decedent, Monroe Weldon, worked at an asbestos manufacturing plant owned and operated by Philip Carey Manufacturing Company in Plymouth Meeting, Pennsylvania. The company was later acquired by defendant. In 1980, Weldon was diagnosed as suffering from asbestosis, a disease that was partially responsible for his death the following year.
 
 
 4
 The complaint alleges two causes of action.[1] First, plaintiff attributes Weldon's illness and death to the company's "negligence, recklessness, carelessness, wantonness, and willfulness" in exposing him to asbestos on the job. Specifically, plaintiff charges that the company failed to advise its employees of the dangerous characteristics of asbestos, and failed to provide proper safety equipment, supervision, and training. Second, the complaint states that the company was "negligent, reckless and careless" in failing to warn decedent after he left its employ. The company is said to have become aware of the health hazards to its former employees through a study performed sometime after 1955. Nevertheless, plaintiff alleges, the company did not notify decedent so that he could take measures, including medical observation, to protect himself.
 
 
 5
 Defendant's 12(b)(6) motion was based on the proposition that the Pennsylvania Occupational Disease Act provides the exclusive remedy for asbestosis claims arising out of employment. Pa.Stat.Ann. tit. 77, Secs. 1201-1603 (Purdon 1952 & Supp.1982). The company contended that the Act also bars the claim for post-employment failure to warn because any such duty would be inextricably bound to the employment relationship.
 
 
 6
 The district court initially held that plaintiff's claims were not covered by the Act because decedent's disability and death did not occur within the statutory period of "three years after the date of his last employment" with the company. Id. Sec. 1401(c).[2] In the absence of coverage, the court concluded, plaintiff's common law negligence remedy remains available.
 
 
 7
 Defendant asked the court to reconsider, contending that the three-year provision in the statute is a period of limitations and not a delineation of coverage. Relying on a recent decision of the Pennsylvania Supreme Court, the district court agreed with defendant and dismissed the complaint. The judge stated "It is now clear ... that plaintiff's decedent did have coverage under the Occupational Disease Act. Given such coverage ... [t]he exclusivity feature of the [Act] is applicable, and as I read the cases, cannot be circumvented by invoking a theory that post-employment failure to warn constitutes a separate and independent tort."
 
 
 8
 Plaintiff advances three arguments on appeal. First, she contends that statutory coverage is limited to disability or death actually occurring within the three-year period following cessation of employment. Under this theory, the Act does not cover her claims, and therefore does not bar her suit. Second, plaintiff maintains that the company's failure to warn decedent after he left its service was a separate tort--an event that is outside the employment scheme and therefore also outside the scope of the Act. Finally, she argues that a section of the Act which grants a stipend to those workers whose claims are otherwise time-barred only provides a disability pension, and does not bar her right to recover under the Wrongful Death Act.
 
 I.
 
 9
 Our consideration of this case begins with a review of The Pennsylvania Occupational Disease Act of 1939. The legislature modeled the statute on the Workmen's Compensation Act, Pa.Stat.Ann. tit. 77, Secs. 1-1066 (Purdon 1952 & Supp.1982), even though, unlike a traumatic injury caused by accident in the workplace, the onset of an occupational disease is not readily determinable. See generally Note, "Compensating Victims of Occupational Disease," 93 Harv.L.Rev. 916 (1980).
 
 
 10
 Like the Workmen's Compensation Act, the Occupational Disease Act is based on a theory of "trade offs." It provides that "compensation for disability or death of [an] employe, caused by occupational disease arising out of and in the course of his employment, shall be paid by the employer, without regard to negligence, according to the schedule" contained in the Act. Pa.Stat.Ann. tit. 77, Sec. 1401(a). In return for this no-fault system of guaranteed payments, the employer is given immunity from common law suits by employees. Id. Sec. 1403.
 
 
 11
 The statutory scheme thus operates on a law of averages. In some instances where he could prove negligence, an employee may receive less compensation than he would recover in damages in a common law suit. In other situations, an employer may have to pay compensation where he would not be liable for any sum at common law. Despite inequities in specific cases, the underlying assumption is that, on the whole, the legislation provides substantial justice.
 
 
 12
 There can be no recovery at common law for a disease that is covered by the Act. Boniecke v. McGraw-Edison Co., 485 Pa. 163, 401 A.2d 345 (1979); Greer v. United States Steel Corp., 475 Pa. 448, 380 A.2d 1221 (1977); Perez v. Blumenthal Bros. Chocolate Co., 428 Pa. 225, 237 A.2d 227 (1968). In those cases, the Pennsylvania Supreme Court determined whether a claim was covered by focusing on the various "occupational diseases" enumerated in section 108 of the Act. Pa.Stat.Ann. tit. 77, Sec. 1208. Asbestosis is listed in section 108(1), and hence is within the scope of the Act. Id. Sec. 1208(1).
 
 
 13
 Plaintiff contends, however, that section 108 is not dispositive of the coverage question. She relies on another provision, section 301(c), which reads:
 
 
 14
 "Wherever compensable disability or death is mentioned as a cause for compensation under this act, it shall mean only compensable disability or death resulting from occupational disease and occurring within three years after the date of his last employment in such occupation or industry."
 
 
 15
 Id. Sec. 1401(c). Since Monroe Weldon's disability and death occurred more than three years after the date of his last employment, plaintiff cannot receive compensation under the Act. She equates her inability to recover with lack of coverage, and argues that her common law rights have not been abrogated.[3]
 
 
 16
 Although originally accepting this interpretation of the statute, the district court changed its position after the Supreme Court decided Commonwealth v. College, 497 Pa. 71, 439 A.2d 107 (1981). There, the state court upheld a 1965 amendment to the Act granting a monthly payment to disabled persons who had not received benefits because of "any of the time limitations prescribed by this act." Pa.Stat.Ann. tit. 77, Sec. 1401(i). The Court observed that the manifest purpose of the amendment was to compensate those victims of occupational disease "who otherwise would be barred from recovery by time limitations contained in the Act." 497 Pa. at 75, 439 A.2d at 109. That opinion demonstrates that plaintiff mistakes a temporal limitation on recovery for a lack of coverage.
 
 
 17
 The College holding is consistent with those of other Pennsylvania appellate courts. In Gawlick v. Glen Alden Coal Co., 178 Pa.Super. 149, 153, 113 A.2d 346, 349 (1955), the Superior Court described the three-year period in section 301(c) as one of several provisions in the Act which are "in effect statutes of limitation." The court said that the legislature wrote these restrictions into the Act because "[t]he law recognizes that contingent liability of whatever nature must sometime end." Id. at 152, 113 A.2d at 348. The Commonwealth Court reached the same conclusion in Bethlehem Steel Co. v. Gray, 4 Pa.Cmwlth. 590, 288 A.2d 828 (1972). It noted that "[l]imitations, because they are arbitrary, are often harsh.... There is unhappily a practical limit to the amounts of benefits employers and the public can provide.... Gawlick, having stood untouched by the Legislature for sixteen years may not be disturbed by us." Id. at 593-94, 288 A.2d at 829-30.
 
 
 18
 Our review of the authorities persuades us that the district judge was correct in his reassessment of Pennsylvania law. We agree that the three-year period provided by the Occupational Disease Act does not restrict coverage of those diseases that are listed, but only limits the time within which claims will be recognized.[4] Consequently, Monroe Weldon's illness and death were within the ambit of the Act and plaintiff's common law remedies are barred.
 
 II.
 
 19
 Plaintiff's alternative theory is that the company breached a post-employment duty to warn the decedent of the risk to his health and the desirability of medical treatment. In adopting this approach, she seeks recovery only for aggravation of the disease, and not for damage caused by the initial exposure to asbestos. The district judge held that the Occupational Disease Act bars this claim as well.
 
 
 20
 Plaintiff argues that because the failure to warn occurred after the employment relationship had ended, the employer's omission is beyond the reach of the Act. She contends there is a separate wrong--the kind of event described in Tatrai v. Presbyterian University Hospital, 497 Pa. 247, 252, 439 A.2d 1162, 1165 (1982), as "totally extraneous to the employment scheme." That case does not support plaintiff's position.
 
 
 21
 In Tatrai, the plaintiff became ill while on her job at a hospital. She went to the emergency room for treatment, and was injured in a fall from a faulty x-ray table. The hospital emergency service was open to the public and it billed Blue Cross for her treatment, just as it would have for other patients. A majority of the Pennsylvania Supreme Court held that, under these circumstances, there was "no basis for distinguishing [plaintiff], a paying customer, from any other member of the public injured during the course of treatment." Id. at 255, 439 A.2d at 1166. Hence, she was not bound by the exclusivity provisions of the Workmen's Compensation Act.
 
 
 22
 The "extraneous to the employment scheme" rationale advanced by plaintiff here represents the position of only a single member of the Tatrai court. The majority viewed the case as a "dual capacity" situation--one in which the defendant may become liable to an employee for actions undertaken in an additional and separate capacity from that of employer. That circumstance is not present in the case at hand, and consequently Tatrai does not apply.
 
 
 23
 Being remedial, the Occupational Disease Act must be liberally construed to accomplish its purpose, which is to provide compensation for disability or death caused by specified diseases. Bley v. Commonwealth Dept. of Labor and Industry, 484 Pa. 365, 399 A.2d 119 (1979). Before a court bars a common law suit for recovery, therefore, it must first determine that the Act provides coverage for the harm. If there is coverage, then the employee's interest has been served and it is appropriate to enforce the reciprocal benefit to the employer--immunity from tort liability for the same injury. It would be inconsistent to allow both compensation under the Act and recovery in a negligence action.
 
 
 24
 The application of these principles to the case at hand is best demonstrated through a series of examples. Suppose that during Weldon's period of employment, the company received reports indicating the existence of a health hazard but failed to advise the decedent of their contents. Were Weldon stricken with asbestosis then, he would be eligible for compensation under the Occupational Disease Act. As an employee, Weldon's disability would be compensable whether the employer was negligent in any respect or without fault. Since there would be coverage under the Act, there would be no common law liability on the part of the employer. Boniecke v. McGraw-Edison Co., supra; Greer v. United States Steel Corp., supra.
 
 
 25
 Now suppose that Weldon had died within three years after his employment had ended. It is clear that he would still be covered by the Act. Even if the alleged separate tort of failure to warn occurred during that post-employment period, Weldon would not be deprived of his right to compensation under the Act. Here again, there would be no common law right to proceed against the employer.
 
 
 26
 As we have seen, the three-year period in section 301(c) is one of limitations, not of coverage. Since it is coverage that takes away employees' rights under the common law, the employer's immunity from tort liability continues even though the limitations period in the Act bars compensation for the employee. Thus, the fact that the failure to warn occurred after the three year period does not change the result--the common law action does not exist. Although that result is harsh, arbitrariness is a necessary result of any period of limitations, and no system of compensation yet devised avoids all inequities. We recognize that the trade offs in the Occupational Disease Act sometimes work to the disadvantage of the intended beneficiaries of the legislation. Nevertheless, this court has no discretion to modify the statutory provisions.
 
 
 27
 As we have stated on a number of occasions, our role in a diversity case is to predict the course of Pennsylvania law, not form it. See, e.g., Keystone Aeronautics Corp. v. R.J. Enstrom Corp., 499 F.2d 146, 147 (3d Cir.1974). We believe that allowing recovery on the failure to warn theory advanced by plaintiff here would be contrary to the spirit of the Occupational Disease Act. The Pennsylvania legislature is free to change the statute if it chooses. See Commonwealth v. College, 497 Pa. at 74, 439 A.2d at 109. Until then, we must rely on case law to determine how the state courts would construe the Act. We have found nothing there to support plaintiff's position.[5]
 
 III.
 
 28
 The plight of people like the Weldons prompted the Pennsylvania legislature to amend the Act in 1965 by providing a $75 monthly payment to disabled employees whose claims are barred by time limitations. Pa.Stat.Ann. tit. 77, Sec. 1401(i). Plaintiff contends that since the 1965 amendment provides benefits only for disability, it cannot affect her rights under the Wrongful Death Act. That may be correct, but the salient point is that the right to bring an action for wrongful death was removed by the Occupational Disease Act itself and has not been restored. The exclusivity of the statute as a remedy was not affected by the amendment.
 
 IV.
 
 29
 One other point merits discussion. The complaint alleges that defendant was negligent, reckless, careless, wanton, and willful. Allegations of this nature do not remove a case from the exclusive remedy provisions of the Act.
 
 
 30
 In Evans v. Allentown Portland Cement Co., 433 Pa. 595, 252 A.2d 646, 647 (1969), the Pennsylvania Supreme Court held that allegations of "a wilful and unlawful violation" of safety provisions were inadequate to state a claim outside the provisions of the Workmen's Compensation Act. Judge Becker, then on the district court, reviewed the Evans opinion in Ulicny v. National Dust Collector Corp., 391 F.Supp. 1265 (E.D.Pa.1975). He held that Pennsylvania law bars recovery of damages against an employer accused of "reckless," "wanton," "willful," and "negligent" conduct. These decisions accord with the general principle that "the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute or other misconduct of the employer short of genuine intentional injury." 2 A. Larson, The Law of Workmen's Compensation Sec. 68.13 (1975).
 
 
 31
 The Pennsylvania Superior Court has held that a deliberate assault by an employer is not an "accident" within the meaning of the Workmen's Compensation Act, and therefore could be the basis for a common law action by the employee. Readinger v. Gottschall, 201 Pa.Super. 134, 191 A.2d 694 (1963).[6] We need not consider whether this type of "genuine intentional injury" is at issue here because plaintiff has neither briefed nor argued that point on this appeal.
 
 
 32
 Accordingly, the judgment of the district court will be affirmed.
 
 
 
 [1]
 Plaintiff also filed a separate complaint against Bell Asbestos Mines, Ltd., the supplier of asbestos to decedent's employer
 
 
 [2]
 The Pennsylvania Occupational Disease Act was amended in 1972. The parties agree that the previous version of the statute applies to this suit
 
 
 [3]
 The Wrongful Death Act, of course, is of statutory rather than common law origin. We do not attribute any significance to that distinction, however, in the context of this case
 
 
 [4]
 In Tysenn v. Johns-Manville Corp., 517 F.Supp. 1290, 1293 (E.D.Pa.1981), Chief Judge Luongo rejected the same argument advanced by plaintiff here
 
 
 [5]
 Although we have assumed arguendo that the failure to warn does constitute a tort, the question appears to be an open one in Pennsylvania. See Glass v. Freeman, 430 Pa. 21, 28 n.2, 240 A.2d 825, 829 n. 2 (Pa.1968). But see Restatement (Second) Torts Sec. 321. We need not decide that issue of state law because, even if there is an otherwise actionable wrong here, it does not fall outside the coverage of the Occupational Disease Act
 
 
 [6]
 The Act was amended in 1972 so that it is no longer necessary for a claimant to establish an "accident" in order to qualify for benefits. A work-related "injury" will suffice. Pa.Stat.Ann. tit. 77, Sec. 411(1) (Purdon Supp.1982)