No. 62,223

RICHARD W. TOMLINSON, *Plaintiff*, v. OWENS-CORNING FIBERGLAS CORPORATION, *Defendant*.
(770 P.2d 833)

Opinion filed March 3, 1989.

*Dennis J. Dobbels*, of Polsinelli, White, Vardeman & Shalton, P.C., of Kansas City, Missouri, argued the cause, and *Joseph R. Colantuono* and *Bruce W. Beye*, of the same firm, of Overland Park, were with him on the brief for defendant Owens-Corning Fiberglas Corporation.

*Dan L. Wulz*, of Bryan, Lykins, Hejtmanek & Wulz, P.A., of Topeka, argued the cause, and *Paul H. Hulsey*, of Ness, Motley, Loadholt, Richardson & Poole, P.A., of Charleston, South Carolina, was on the brief for plaintiff.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The plaintiff, Richard W. Tomlinson, filed suit against various defendants in the United States District Court for the District of Kansas. Plaintiff's suit alleged that he had developed an asbestos-related disease through exposure to products manufactured, distributed, and sold by the defendants. One of the defendants, Owens-Corning Fiberglas Corporation (OCF), filed a motion in the United States District Court for summary judgment, alleging that the plaintiff's action was barred by the provisions contained in K.S.A. 44-5a06 and K.S.A. 44-5a07.

The United States District Court has certified to this court for its review four questions related to OCF's motion. The order of certification meets the requirements of K.S.A. 60-3201 *et seq.*, and we accept certification. For purposes of this review, the District Court's order of certification provides, in part:

"[P]laintiff's exposure to excessive quantums of asbestos causing his asbestos-related occupational disease [which resulted in his claim] against the named defendants occurred within the years 1965 to 1971. The plaintiff worked for OCF and was exposed to its asbestos-containing thermal insulation products during the years 1965, 1966 and 1968. Plaintiff's only exposure to OCF's products occurred while employed by OCF. Plaintiff's disablement did not occur within one year of his last injurious exposure to the products of OCF. Plaintiff has filed a workers' compensation action against his last employer, AC&S, Inc., claiming that his asbestos-related disease also arose out of and during the course of his employment with AC&S, Inc. None of the other defendants against whom plaintiff brought this civil action employed plaintiff, and those defendants do not claim plaintiff is barred by the Act from pursuing a civil action against these defendants."

In addressing the first certified question, we note that occupational diseases, such as asbestosis, are brought within the scope of the Kansas Workers' Compensation Act by K.S.A. 44-5a01 *et seq.* K.S.A. 44-5a01(a) provides:

"Where the employer and employee or workman are subject by law or election to the provisions of the workmen's compensation act, the disablement or death of an employee or workman resulting from an occupational disease as defined in this section shall be treated as the happening of an injury by accident, and the employee or workman or, in case of death, his dependents shall be entitled to compensation for such disablement or death resulting from an occupational disease, in accordance with the provisions of the workmen's compensation act as in cases of injuries by accident which are compensable thereunder, except as specifically provided otherwise for occupational diseases."

The exclusive nature of the remedy provided by the occupational disease portion of the Workers' Compensation Act is established by K.S.A. 44-5a07:

"**Securing payment of compensation; liability exclusive.** An employer subject to the provisions of this act shall secure the payment of compensation in accordance with the provisions of this act in any method prescribed by the provisions of section 44-532 of the workmen's compensation law, and such insurance or other security may be separate and distinct from the insurance or other security under the workmen's compensation law. Where the foregoing requirement is complied with the liability of the employer under this act shall be exclusive and in place of any and all other civil liability whatsoever, at common law or otherwise."

The occupational disease portion of the Act expressly adopts the "last injurious exposure" rule. K.S.A. 44-5a06 states, in part:

"The date when an employee or workman becomes incapacitated by an occupational disease from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease, shall be taken as the date of the injury equivalent to the date of accident under the workmen's compensation act. Where compensation is payable for an occupational disease, the employer in whose employment the employee or workman was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall be liable therefor, without the right to contribution from any prior employer or insurance carrier."

Clearly, under the last injurious exposure rule, the entire responsibility for a worker's occupational disease is placed upon the employer who last created the risk of the worker's contraction of the disease by exposing him to the substance which caused the disease. Previous employers, who may also have

exposed the worker to the potentially harmful substance, are shielded from liability under the rule. The rationale for the rule was stated in *Bracke v. Baza'r*, 293 Or. 239, 646 P.2d 1330 (1982):

"The last injurious exposure rule of proof more typically applies where one employment caused the disease, but more than one could have. By arbitrarily assigning liability to the last employment which could have caused the disease, the rule satisfies claimant's burden of proof of actual causation. The reason for the rules lies not in their achievement of individualized justice, but rather in their utility in spreading liability fairly among employers by the law of averages and in reducing litigation.

. . . .

"The operation of the rule, as we said in *Inkley* [*v. Forest Fiber Products Co.*, 288 Or. 337, 605 P.2d 1175 (1980)], provides certainty in a way which is 'somewhat arbitrary.' It operates generally for the benefit of the interests of claimants. It is fair to employers only if it is applied consistently so that liability is spread proportionately among employers by operation of the law of averages. We hold that employers have and may assert an interest in the consistent application of the last injurious exposure rules, either as to proof or liability, so as to assure that they are not assigned disproportionate shares of liability relative to other employers who provide working conditions which generate similar risk." 293 Or. at 248-50.

Although in many cases the rule has been adopted by statute, in a number of jurisdictions the courts have adopted the rule in the absence of legislation. *E.g., Osteen v. A.C.& S., Inc.*, 209 Neb. 282, 307 N.W.2d 514 (1981). See Annot., 34 A.L.R.4th 958.

The Court of Appeals of Maryland upheld that state's adoption of the last injurious exposure rule in *Lowery v. McCormick Asbestos Co.*, 300 Md. 28, 475 A.2d 1168 (1984). After reviewing the application of the last injurious exposure rule in other jurisdictions, the *McCormick* court concluded that the rule

"is in full harmony with the stated aims of the Legislature in the enactment of the Workmen's Compensation Laws of Maryland in that

"(1) It provides greater likelihood for 'sure and certain relief' to workers disabled by occupational diseases:

"(a) By fixing a date certain for the timely filing of required notices and claims; thereby lessening defeat of a valid claim.

"(b) By eliminating the often impossible burden of proving medical causation of the disease to a particular workplace.

"(c) By improving administration of the Act by eliminating delays inherent in disputes among employers relating to apportionment or allocation of liability; by shortening and simplifying hearings in disputed cases; and by decreasing legal and investigative expense.

"(2) It provides fair distribution of the heavy burden of occupational disease coverage by spreading liability among all employers on the theory that all causal employers will be last causal employers a proportionate share of the time." 300 Md. at 48-49.

The *McCormick* court stressed that the policies underlying the last injurious exposure rule required its consistent application. 300 Md. at 49. The court concluded that fundamental fairness requires that "the rule be applied uniformly and universally in order that the burden assigned to the last causal employer would—over the long haul—be equalized among all causal employers under the law of averages." 300 Md. at 50-51.

In the present case, OCF falls within the provisions of the last injurious exposure rule as adopted by the legislature in K.S.A. 44-5a06. The employer in whose employment the plaintiff was "last injuriously exposed to the hazards of" asbestosis or other asbestos-related disease was AC&S, Inc. OCF, as a prior employer of the plaintiff, is not subject to civil liability to the plaintiff. The plaintiff's right of compensation is limited under K.S.A. 44-5a06 and K.S.A. 44-5a07 to his last employer or to the other defendants who manufactured, distributed, and sold asbestos but were not prior employers of the plaintiff. We therefore answer the first question certified by the United States District Court in the affirmative.

We now address the second and third certified questions. The plaintiff contends that, because his asbestos-related disease did not develop until more than one year after his last exposure to asbestos, he did not suffer from an "injurious" exposure which would bring the case within the scope of the last injurious exposure rule contained in K.S.A. 44-5a06, and thus he would be entitled to workers' compensation benefits.

We do not agree. The time limitations contained in the Act are independent limitations upon a worker's procedural rights to recover under the Act, and do not serve as definitions of whether a specific occupational disease is an "injury" or a "disability" within the provisions of the Act. A similar argument was rejected by the Third Circuit Court of Appeals in *Weldon v. Celotex Corp.*, 695 F.2d 67 (3d Cir. 1982). The court found the limitations period contained in the Pennsylvania Occupational Disease Act "does not restrict coverage of those diseases that are listed, but only limits the time within which claims will be recognized." 695 F.2d at 71.

The plaintiff also contends that, since asbestosis is a progressive disease and often takes more than one year to develop, the

legislature did not intend that the statutory limitations apply to asbestos-related diseases. The plaintiff argues that, if his claims under the Workers' Compensation Act against his last employer in whose employment he was exposed to asbestos are barred by the time limitations contained in the Act, he should not be subjected to the provisions of the last injurious exposure rule contained in K.S.A. 44-5a06. The plaintiff argues, in essence, that the last injurious exposure rule and the exclusive remedy provision should apply only where the last employer is subject to liability under the provisions of the Act.

The occupational disease article of the Workers' Compensation Act contains several time limitations which limit an employee's right to recover for such injuries. Under K.S.A. 44-5a17, an employee or his representative must submit written notice to his employer of the disease within ninety days of his disablement or death. The same statute also provides, in part:

"If no claim for disability or death from an occupational disease be filed with the workmen's compensation director or served on the employer within one (1) year from the date of disablement or death, as the case may be, the right to compensation for such disease shall be forever barred."

An additional time limitation upon an employee's right to bring an action for compensation for contracting an occupational disease is established by K.S.A. 44-5a01(c), which provides:

"In no case shall an employer be liable for compensation under this section unless disablement results within one (1) year or death results within three (3) years in case of silicosis, or one (1) year in case of any other occupational disease, after the last injurious exposure to the hazard of such disease in such employment, or, in case of death, unless death follows continuous disability from such disease, commencing within the period above limited, for which compensation has been paid or awarded or timely claim made as provided in the workmen's compensation act, and results within seven (7) years after such last exposure. Where payments have been made on account of any disablement from which death shall thereafter result such payments shall be deducted from the amount of liability provided by law in case of death. The time limit prescribed by this section shall not apply in the case of an employee whose disablement or death is due to occupational exposure to ionizing radiation."

The result of the plaintiff's argument would be that an employee who wished to escape the application of the last injurious exposure rule and the exclusive remedy provision of the Act could do so by simply ignoring the time limitations established by the Act. More importantly, the previously cited rationales underlying the last injurious exposure rule require its consistent

application, even if the last employer is subject to a claim for benefits. *Farrall v. Armstrong Cork Co.*, 457 A.2d 763, 768 (Del. Super. 1983). We interpret K.S.A. 44-5a01 and K.S.A. 44-5a17 to clearly require that a claim such as the plaintiff's must be filed within one year. Failure to do so precludes recovery of workers' compensation benefits based upon an occupational disease. In *Hormann v. New Hampshire Ins. Co.*, 236 Kan. 190, 199, 689 P.2d 837 (1984), we said:

"As a general rule, exclusive of exceptions created in the Act itself, the Kansas Act's operation is exclusive of all other remedy and liability. Kansas cases have followed the principle that if the Kansas Workmen's Compensation Act affords the worker a remedy for the wrong, the compensation Act is exclusive, thus barring an independent tort action at common law."

Since the plaintiff is afforded a remedy under the Workers' Compensation Act, any recovery for disablement occurring one year or more from the last injurious exposure would be barred. We therefore answer the second certified question in the negative and the third certified question in the affirmative.

Finally, we address the fourth certified question. The plaintiff argues that it is unconstitutional to apply the last injurious exposure rule when he is time-barred from bringing a claim under the Workers' Compensation Act against his last employer. This court has repeatedly upheld the constitutionality of the exclusive remedy provisions of the Kansas Workers' Compensation Act. See, *e.g., Rajala v. Doresky*, 233 Kan. 440, 441-42, 661 P.2d 1251 (1983). The plaintiff's argument, in reality, turns upon whether the time limitations contained in K.S.A. 44-5a01(c) and K.S.A. 44-5a17 are unconstitutional. If the time limitations contained in these provisions are constitutionally valid, the plaintiff, who has failed to comply with their requirements, may also be constitutionally subjected to the exclusive remedy provisions contained in the Act, including the last injurious exposure rule.

Due to the increased awareness of the extent of latent injuries caused by exposure to asbestos and other substances creating latent diseases, many states have expanded the time in which an injured person may bring an action for recovery for such a disease. Thus, many states have adopted legislation providing that the limitations period in latent disease cases does not begin to run until the disease is discovered, diagnosed, or otherwise manifests itself. See Annot., 1 A.L.R.4th 117. However, a few states, such as Kansas, have retained legislation providing that

the limitations period begins upon the injured person's last exposure to the substance which caused the disease. Courts which have interpreted such statutes have normally held that such statutes are constitutional, even though the time limitations involved may be much shorter than the normal latency period of the disease.

In *Stone v. SAIF*, 57 Or. App. 808, 646 P.2d 668 (1982), the Oregon Court of Appeals found that the time limitation contained in the occupational disease provisions of the Oregon Workers' Compensation Law was constitutional. The relevant portion of Oregon law in effect at the time provided that claims for occupational diseases, except for silicosis, must be filed "within five years after the last exposure in employment." Or. Rev. Stat. § 656.807(1) (1981). After his claim for asbestosis was disallowed as time-barred by the Workers' Compensation Board, the claimant appealed to the Court of Appeals, contending that the limitations period was unconstitutional in light of the long latency period of asbestosis. The Oregon Court of Appeals rejected the claimant's constitutional challenge, stating: " 'It is a permissible constitutional legislative function to balance the possibility of outlawing legitimate claims against the public need that at some definite time there be an end to potential litigation.' " 57 Or. App. at 811 (quoting *Josephs v. Burns & Bear*, 260 Or. 493, 503, 491 P.2d 203 [1971]).

Similarly, in *Wyoming Refining Co. v. Bottjen*, 695 P.2d 647 (Wyo. 1985), the Wyoming Supreme Court upheld a provision in that state's workers' compensation law which included a similar time limitation. The Wyoming statute provided that the claim must be filed within "one (1) year after a diagnosis of injury is first communicated to the employee, or within three (3) years from the date of last injurious exposure to the condition causing the injury, *whichever occurs first*." (Emphasis added.) Wyo. Stat. § 27-12-503 (1977). The court held that a subsequent change in Wyoming law could not be retroactively applied, and that the prior statute effectively barred the appellee's claim for injuries resulting from his exposure to asbestos. The court concluded that the prior statute was clear and unambiguous. The court stated:

"Appellee's claim had to be brought within three years of the date of his last injurious exposure to asbestos. We are sympathetic to the unenviable position he was placed in under the old statute of limitations. We believe this is the kind of situation the new statute was designed to alleviate. However, we are not at

liberty to apply the new statute retrospectively under established principles of law absent clear legislative manifestation. Such would be an invasion of the legislative province." 695 P.2d at 650.

In *Tyson v. Johns-Manville Sales Corp.*, 399 So. 2d 263, 269 (Ala. 1981), the Alabama Supreme Court struck down as unconstitutional an Alabama law which attempted to retroactively expand the time in which latent disease claims could be brought. In so doing, the court found that the prior version of the statute applied. The court stated that, under the prior statute, "a claim based on asbestos injury would have accrued on the last date of plaintiff's exposure to defendant's product." 399 So. 2d at 268. The *Tyson* court also noted that, under the prior law, "if . . . one year had elapsed between the date of plaintiff's exposure and the date on which plaintiff's action was commenced, then that claim is nevertheless barred by the statute of limitations." 399 So. 2d at 267. During the course of its opinion, the court stated that "the legislature has the inherent power to determine the period within which an action may be brought, provided that the time fixed is reasonable." 399 So. 2d at 268. Thus, the court's decision that the prior version of Alabama law was applicable implicitly required a conclusion that the prior law's one-year limitation from the time of exposure was reasonable and binding.

Finally, a similar result was reached by the Indiana Supreme Court in *Bunker v. National Gypsum Co.*, 441 N.E.2d 8 (Ind. 1982). In *Bunker*, the plaintiff sought benefits under the Indiana Workmen's Occupational Diseases Act for his asbestosis. The plaintiff challenged the constitutionality of a provision in the Act which provided that no compensation was payable for occupational diseases caused by asbestos dust " '*unless disablement . . . occurs . . . within three [3] years after the last day of the last exposure* to the hazards of such disease.' " 441 N.E.2d at 10 (quoting Ind. Code Ann. § 22-3-7-9[e] [Burns 1974]).

The Third District of the Indiana Court of Appeals accepted the plaintiff's argument, and held in 1981 that the Indiana statute was unconstitutional. *Bunker v. National Gypsum Co.*, 426 N.E.2d 422, 425 (Ind. App. 1981). The Court of Appeals' decision was reversed one year later by the Indiana Supreme Court. *Bunker v. National Gypsum Co.*, 441 N.E.2d 8. After reviewing the appropriate standards to be applied in determining the

constitutionality of legislative acts, the Indiana Supreme Court concluded that the statute was constitutional:

"In questioning the wisdom of the legislature, the Court of Appeals has in effect rewritten this law thereby usurping the legislature's constitutionally mandated function. If we were to affirm the Court of Appeals in their decision, the legislative intent to provide a definitive time period within which all occupational disease claims must be brought would be frustrated. Specifically, Ind. Code § 22-3-7-9(e) would be meaningless because all disabilities caused by a work-related disease would be compensable under the Act. In addition, the statutory scheme providing for the application of a 'discovery' rule only in radiation exposure cases would be subverted. We will not allow such a blatant abuse of judicial power. . . .

. . . .

"It is within the duties and responsibilities of the legislature to keep itself advised of the general progress of medical learning and to make the determination as to whether or not new or revised legislation is needed. Not only being so charged, the legislature is also best equipped to make this determination. A cursory examination of the legislative history of the Indiana Occupational Diseases Act shows that since its inception in 1937, the legislature has on several occasions updated the Act through amendment. In fact, the proviso which relates to occupational disabilities caused by radiation exposure was added in 1961. Again in 1974 when disabilities due to coal dust inhalation were made subject to the three year limitation period, the General Assembly indicated that it was aware of its need to review and revise the Occupational Diseases Act. If this statute requires further updating through amendment, it remains the duty and responsibility of the legislature to do so. There are no grounds for finding any constitutional infirmity in the present form of this statute." 441 N.E.2d at 13-14.

We conclude that the last injurious exposure rule and the time limitations contained in the occupational disease portion of the Workers' Compensation Act do not amount to an unconstitutional denial of remedy. The answer to the fourth certified question is no.

HERD, J., concurring and dissenting: I concur with the response of the majority to certified question number one.

I also concur on question number two, agreeing we are bound by the wording of K.S.A. 44-5a01(c), which provides the employer is not liable for compensation if the worker's disablement occurs more than one year after the last injurious exposure to the hazard. However, I do not agree with the effect of this statute. It effectively denies workers' compensation coverage to workers who contract latent diseases, such as asbestosis, which do not manifest themselves for a number of years after the exposure. This oversight should be corrected by the legislature.

I disagree with the majority on question number three. The Workers' Compensation Act was declared constitutional only

because, in taking away the worker's common-law remedy, it substituted a remedy for the benefit of the worker by providing liability without fault. See *Rajala v. Doresky*, 233 Kan. 440, 661 P.2d 1251 (1983). Workers who are victims of asbestosis have lost their common-law remedy without receiving the required substitute remedy under the Act. Therefore, the Act should not be an exclusive remedy in these cases. If the injury complained of is not within the Act's provisions, the remedy under the Act is not exclusive. *Echord v. Rush*, 124 Kan. 521, 523, 261 Pac. 820 (1927).

This rule should be applied to carry out the original quid pro quo of the Workers' Compensation Act. An occupational injury listed under the Act is nonetheless outside its provisions where the Act's statute of limitations runs before the worker's disablement.

Finally, the Act is unconstitutional as it applies to victims of asbestosis. Every person is guaranteed a remedy by due course of law for injury to his or her person. Kan. Const. Bill of Rights § 18. It is the duty of this court to guard the Kansas Constitution. *Kansas Malpractice Victims Coalition v. Bell*, 243 Kan. 333, 340, 757 P.2d 251 (1988). We held in *Bell* that a statute which placed a cap on recovery for injuries to persons violated the Kansas Constitution. Surely the denial of *any* remedy for personal injury is a more blatant transgression of the constitution. I would answer certified question number four in the affirmative. The Act is unconstitutional as it applies to victims of asbestosis.