Larry J. GANSKE and Lois Ganske, Appellants,

v.

SPAHN AND ROSE LUMBER CO., An Iowa Corporation; Carnation Company, A Delaware Corporation; Nestle Food Company a/k/a Nestle Beverage Company, A Delaware Corporation; and Deere & Company a/k/a John Deere Company, A Delaware Corporation, Appellees,

Bird, Incorporated, A Massachusetts Corporation; Combustion Engineering, Inc., A Delaware Corporation; The Flintkote Company, A Massachusetts Corporation; Garlock, Inc., An Ohio Corporation; Georgia Pacific Corporation, A Georgia Corporation; Owens Corning Fiberglas Corporation, A Delaware Corporation; Owens Illinois, Inc., A Delaware Corporation; Pittsburgh Corning Corporation, A Pennsylvania Corporation; PPG Industries, Inc., A Pennsylvania Corporation; Rapid–american Corporation, A Delaware Corporation; John Doe 1; John Doe 2; John Doe 3; and Various Unknown John Does To Be Named When Identified, Defendants.

No. 96–865.

Supreme Court of Iowa.

July 1, 1998.

Lex Hawkins, Glenn L. Norris, George F. Davison, Jr., and Carla T. Schemmel of Hawkins & Norris, Des Moines, for appellants.

James Heckmann of James Heckmann Law Offices, P.C., Dubuque, for appellee Spahn & Rose Lumber Co.

Randall Stefani of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee Nestle Food Company.

Richard J. Sapp and Thomas H. Walton of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellee Deere & Co.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, ANDREASEN, and TERNUS, JJ.

LARSON, Justice.

The district court dismissed these plaintiffs' common-law suit for damages based on an employee's contraction of mesothelioma. The court dismissed the suit on the ground that our workers' compensation and occupational disease statutes are the exclusive means of obtaining benefits for that disease. *See* Iowa Code chs. 85, 85A (1995). We affirm.

I. **Facts and Judicial Proceedings.**

For many years prior to 1985, Larry J. Ganske worked for employers whose sites, he alleges, exposed him to asbestos. In 1994 Ganske was diagnosed with mesothelioma, an asbestos-related cancer.[1] Ganske and his wife sued various former employers and manufacturers of asbestos products. Because the issue on this appeal is limited to the exclusivity of our workers' compensation statutes, only Ganske's former employers are involved. The manufacturers of the asbestos products are not participants in this appeal.

Ganske worked for Spahn and Rose Lumber Company in 1959, for Carnation Company (now Nestle Food Co.) from 1966 to 1973, and for Deere & Company from 1973 to 1985. Ganske alleged that he was exposed to various asbestos-containing products during his employment with all of these companies. The employers concede, for purposes of this appeal, that Ganske's disease arose out of and in the course of his employment.

---

1. Mesothelioma is "a rare tumor arising from the mesothelial cells lining the pleural, pericardial and peritoneal cavities. The latency period of mesothelioma ranges from twenty to forty years. Unilateral chest pain and shortness of breath are the most common presenting symptoms of the tumor." *Wilber v. Owens–Corning Fiberglas Corp.*, 476 N.W.2d 74, 75 (Iowa 1991). The disease may be compared to asbestosis, which is "a pneumoconiosis produced by inhaling asbestos fibers. It is characterized by bilateral diffuse interstitial fibrosis of the lung parenchyma." *Id.*

The defendants filed motions, variously referred to as motions to dismiss and motions for summary judgment, all alleging the same defense: as a matter of law, Ganske's common-law claims for work-related disease are preempted by the workers' compensation and occupational disease statutes found in Iowa Code chapters 85 and 85A.

## II. *The Law.*

■ Iowa Code section 85A.12 states:

An employer shall not be liable for any compensation for an occupational disease unless such disease shall be due to the nature of an employment in which the hazards of such disease actually exist, and which hazards are characteristic thereof and peculiar to the trade, occupation, process, or employment, and such disease actually arises out of the employment, and unless disablement or death results within three years in case of pneumoconiosis, or within one year in case of any other occupational disease, after the last injurious exposure to such disease in such employment....

It is undisputed that Ganske's mesothelioma did not develop within either the one-year or three-year period provided by this section. He stopped working in those environments in 1985 and was not diagnosed with mesothelioma until 1994, so it appears that this suit is barred. Ganske argues, however, that, because his workers' compensation recovery is precluded by the time requirements of section 85A.12, his common-law right to recovery should remain intact—the quid pro quo for his loss of workers' compensation.

Ganske's legal hurdle, of course, is the exclusivity of workers' compensation. Iowa Code section 85.20 provides:

The rights and remedies provided in this chapter [workers' compensation], chapter 85A [occupational disease] or chapter 85B [hearing loss] for an employee on account of injury [or] occupational disease ... *for which benefits under this chapter, chapter 85A or chapter 85B are recoverable, shall be the exclusive and only rights and remedies of such employee,* the employee's personal or legal representatives, dependents, or next of kin, at common law or other-

wise, on account of such injury [or] occupational disease ... against:

1. the employee's employer....

(Emphasis added.) The parties apparently agree that mesothelioma is an occupational disease that normally would be compensable under the workers' compensation laws. The issue is whether benefits for *Ganske's* disease were "recoverable" in view of the long period of nondetection.

We have discussed the policy basis for workers' compensation statutes and the quid pro quo rationale underlying them.

"The primary purpose of the workers' compensation statute is to benefit the worker and his or her dependents, insofar as statutory requirements permit." *McSpadden v. Big Ben Coal Co.,* 288 N.W.2d 181, 188 (Iowa 1980). *Accord, Caterpillar Tractor Co. v. Shook,* 313 N.W.2d 503, 506 (Iowa 1981) ("Thus the statute is to be interpreted liberally with a view toward that objective.").

The legislature has plainly tried by the foregoing statutes to protect employers from facing tort suits brought by injured employees. It should certainly not be necessary to repeat here that this protection is in exchange for advantages to employees under the workers' compensation act. The protection is a worthy goal, much in the public interest, including the interests of employees who have a great deal at stake in the act.

. . . .

The plain language of section 85.20 refutes any contention that an employee can sue an employer....

*Harned v. Farmland Foods, Inc.,* 331 N.W.2d 98, 100 (Iowa 1983).

One workers' compensation authority has noted that, if an injury is, in general, compensable under workers' compensation, a worker who does not actually realize the benefits because of the specific facts of that worker's case may still be denied a common-law remedy under the exclusivity rationale of the statutes. *See* 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 65.00, at 12–1 (1998) [hereinafter Larson]. Thus,

[t]he compensation remedy is exclusive of all other remedies by the employee or his dependents against the employer and insurance carrier for the same injury, if the injury falls within the coverage formula of the act. If it does not, as in the case where occupational diseases were deemed omitted because not within the concept of accidental injury, the compensation act does not disturb any existing remedy. However, if the injury itself comes within the coverage formula, an action for damages is barred even [ ]though the particular element of damage is not compensated for, as in the case of disfigurement in some states, impotency, or pain and suffering.

*Id.* In such case,

[a] distinction must be drawn ... between an injury which does not come within the fundamental coverage provisions of the act, and an injury which is in itself covered but for which, under the facts of the particular case, no compensation is payable.

6 Larson § 65.40, at 12–55.

 Further, Iowa Code section 85A.12, which relieves employers from any liability for disablement or death after one year (or three for pneumoconiosis) from the worker's last exposure is not amenable to the application of the "discovery" doctrine.

This is because ... we are not dealing with a statute of limitation. The provision [section 85A.12] does not list times within which claims must be brought, a routine ingredient of a statute of limitations. Rather it states conditions which must exist before a right of compensation arises. Under its provisions the disease must manifest itself within set periods (three years for pneumoconiosis—or one year for other occupational diseases). Otherwise the statute provides no recovery. Like a statute of limitations the section is grounded in time. Unlike a statute of limitations, however, it has nothing to do with when actions must be brought.

The discovery rule is a device to relieve the harshness in certain applications of statutes of limitations. It extends the time within which actions must be brought.

The rule cannot be used to eliminate statutory elements for a cause of action.

*Meyer v. Iowa State Penitentiary,* 476 N.W.2d 58, 60 (Iowa 1991) (citations omitted) (footnote omitted). *Meyer* also involved a mesothelioma claim in which we held that the widow of a former employee was not eligible for occupational disease benefits because the disease did not manifest itself within the statutory time period. That case did not address the present issue—whether a claimant has a common-law remedy in such a case. We have said that

[t]he Workmen's Compensation Law creates a right of action.... The legislature, having the power to create the right, may affix the conditions under which it is to be enforced, and a compliance with those conditions is essential.

*Otis v. Parrott,* 233 Iowa 1039, 1045–46, 8 N.W.2d 708, 712–13 (1943). One requirement for recovery under chapter 85A is that a worker's disablement or death occur within the prescribed one- or three-year period. Iowa Code § 85A.12. In this case, benefits were recoverable, even though they had not actually been recovered, because mesothelioma is a covered disease.

In *Weldon v. Celotex Corp.,* 695 F.2d 67 (3d Cir.1982), the Third Circuit interpreted Pennsylvania's occupational disease act (limiting compensation for asbestosis claims to those arising within three years) to be the worker's exclusive remedy, even though the deceased employee did not develop the disease for twenty-five years. *Weldon,* 695 F.2d at 69–71. The Pennsylvania statute, like Iowa's, provides a no-fault system of guaranteed payment to employees in exchange for the employer's immunity from common-law suit.

Ganske attempts to individualize the concept of quid pro quo on the ground that *he* did not receive workers' compensation benefits, and he therefore should not be precluded from bringing a common-law action. The quid pro quo concept, however, cannot be so limited. The theory of workers' compensation is that workers and employers, as groups and not as individuals, are deemed to relinquish certain of their common-law rights

in exchange for a limited, relatively certain recovery under workers' compensation.

As the *Weldon* court observed,

> [t]he statutory scheme thus operates on a law of averages. In some instances where he could prove negligence, an employee may receive less compensation than he would recover in damages in a common law suit. In other situations, an employer may have to pay compensation where he would not be liable for any sum at common law. *Despite inequities in specific cases, the underlying assumption is that, on the whole, the legislation provides substantial justice.*
>
> There can be no recovery at common law for a disease that is covered by the Act.

695 F.2d at 70 (emphasis added). The court concluded:

> We agree that the three-year period provided' by the ... Act does not restrict coverage of those diseases that are listed, but only limits the time within which claims will be recognized. Consequently, [the employee's] illness and death were within the ambit of the Act and plaintiff's common law remedies are barred.

*Id.* at 71 (footnote omitted).

The Kansas court in *Tomlinson v. Owens–Corning Fiberglas Corp.*, 244 Kan. 506, 770 P.2d 833 (1989), reached a similar result. Relying on the exclusivity provision of its workers' compensation statute, the court held that a claimant was barred from receiving compensation even though the asbestos-related disease did not become known within the allowable time limits. *Id.* 770 P.2d at 838.

We agree with the district court that workers' compensation provided the exclusive remedy for Ganske's mesothelioma and that this common-law suit is therefore barred. We affirm the dismissal.

### III. *The Constitutional Challenge.*

Ganske argues that, if our workers' compensation statutes provide the exclusive remedy and Ganske was unable to learn of his condition prior to the expiration of the statutory time for claims, the statute violates his constitutional due process and equal protection rights.

He raised the constitutional issue in his resistance to the defendants' motions to dismiss and for summary judgment; however, the district court did not rule on the constitutional issue. Ganske did not file a motion under Iowa Rule of Civil Procedure 179(b) to expand the order and findings. He has therefore waived the issue on appeal. *See Clinton Nat'l Bank v. Kirk Gross Co.*, 559 N.W.2d 282, 283 n. 3 (Iowa 1997).

**AFFIRMED.**